UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOHN D AHERN | § | |
| | § | |
| Plaintiff | § | |
| VS. | § | CIVIL ACTION NO. 2:14-CV-259 |
| | § | |
| UNITED STATES OF AMERICA | § | |

**MEMORANDUM AND RECOMMENDATION**
**ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This civil rights action was filed by a former federal prisoner pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2674 *et seq.,* seeking damages against the United States of America based on the conduct of employees of the U.S. Marshals Service (USMS). (D.E. 1, 16). In particular, Plaintiff alleges that individual marshals were deliberately indifferent to his serious medical needs in violation of his constitutional rights while he was housed at the Coastal Bend Detention Center (CBDC), a contract facility of the Government, such that the Government is liable to Plaintiff for damages.

Pending is the Government's Motion to Dismiss Complaint, or in the alternative, Motion for Summary Judgment. (D.E. 40). Because the Government relies on matters outside of the pleadings, the motion is construed as one for summary judgment pursuant to Fed. R. Civ. P. Rule 56(c). Plaintiff has filed a response in opposition. (D.E. 47, 48).

For the reasons stated herein, it is respectfully recommended that the Court grant the Government's summary judgment motion because the uncontested evidence establishes the Government delegated Plaintiff's medical treatment to the CBDC, the

1 / 18

CBDC is an independent contractor, and as such, the Government is shielded from liability pursuant to *Logue v. United States,* 412 U.S. 521 (1973).

## I.     JURISDICTION.

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II.     PROCEDURAL BACKGROUND.

On June 11, 2014, Plaintiff filed his FTCA original complaint.  (D.E. 1).  Plaintiff alleged that, while he was in federal custody and confined at the CBDC in Robstown, Texas, from March 16, 2011 through January 6, 2012, he was denied appropriate and adequate medical attention for the following severe medical conditions: (1) Benign Enlarged Prostate (BEP); (2) stomach ulcers and acid reflux; (3) fluid on the knee with pain; (4) Restless Leg Syndrome (RLS); and (5) fever and infection following prostate biopsy.  (D.E. 1, pp. 5-11).

Following a July 15, 2014 *Spears*[1] hearing, on July 18, 2014, the undersigned magistrate judge entered a Memorandum and Recommendation (M&R) to dismiss Plaintiff's FTCA claims finding that Plaintiff had failed to allege sufficient facts to state a negligence claim against the CBDC physician, Dr. Ahmed, or the USMS by which to hold the United States liable.  (D.E. 14, pp. 7-8).  In addition, it was recommended, to the extent Plaintiff was attempting to sue any individual for the violation of his constitutional rights under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,*

---

[1] *Spears v. McCotter,* 766 F.2d 179 (5th Cir. 1985).

403 U.S. 398 (1971), that those claims be dismissed for failure to state cognizable constitutional violations. (D.E. 14, pp. 9-10).

On July 31, 2014, Plaintiff filed objections to the July 18, 2014 M&R. (D.E. 16). Plaintiff emphasized that he had filed this action pursuant to the FTCA "seeking damages against the United States of America, for the negligent and wrongful acts of certain United States Marshals Service employees." (D.E. 16, p. 1).

On November 10, 2014, the District Judge referred the matter back to the undersigned to address the applicability of the FTCA to Plaintiff's claims against the USMS. (D.E. 18).

On December 22, 2014, a second evidentiary hearing was held. Plaintiff appeared in person to provide testimony about his FTCA claims against the USMS. Plaintiff testified the USMS had a "daily presence" at the CBDC. According to Plaintiff, the USMC had an office onsite at the CBDC and the Marshals performed daily walk-throughs to "count" offenders under their charge. Although the CBDC provides the medical staff, Plaintiff testified he submitted his grievances concerning medical care directly to the USMS and he repeatedly spoke to two Marshals in particular, Deputy Shannon Nash and Deputy Alfredo Lujan, about his medical needs. His complaints included:

(1)     His monthly medications were always delayed, causing him to miss approximately ten (10) days of Doxazosin a month;

(2)     Although Plaintiff was seen by a urologist to perform a prostate biopsy, he was never "treated" by a urologist and was simply given Doxazosin by Dr. Ahmed based on Plaintiff's representation that he had been prescribed it in the free world;

(3)     Plaintiff was prescribed Naproxen for complaints of pain. Not only did he need stronger pain medication, but the Naproxen caused him severe gastrointestinal problems, including stomach ulcers and acid reflux. The CBDC physician, Dr. Ahmed, told Plaintiff the USMS would not approve stronger pain medication;

(4)     Plaintiff suffered fluid on the knee but was never examined or diagnosed by a doctor but only prescribed more Naproxen;

(5)     Plaintiff requested to see a neurologist for his RLS but the USMS ignored his requests;

(6)     When Plaintiff had his prostate biopsy, his antibiotic prescription was lost and he suffered a serious infection with fever. The USMS was responsible for ensuring the prescription was filled and administered timely and this did not happen; and

(7)     Plaintiff complained to Deputy Lujan and Deputy Nash and these Marshals both assured him that his medical needs would be met. Plaintiff also filed numerous grievances with the USMS but he did not receive responses.

On January 8, 2015, the undersigned entered a supplemental M&R recommending that any FTCA claim premised on the conduct of a non-government employee, in particular Dr. Ahmed or other CBDC employee, be dismissed for failure to state a claim, and also that any constitutional claim against an individual defendant brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 398 (1971) be dismissed on those same grounds. (D.E. 21, p. 10). However, it was recommended that Plaintiff's FTCA claim against the United States, premised on the conduct of the USMS and its control over what medications and medical treatment

Plaintiff was authorized to receive, in addition to how his grievances concerning that care were addressed, be retained. (D.E. 12).

On February 23, 2015, the Court adopted the supplemental M&R. (D.E. 26).

On March 16, 2015, the Government filed a Rule 12(b)(6) Motion to Dismiss, or in the Alternative, Motion for Summary Judgment arguing the CBDC is an independent contractor such that the United States cannot be responsible for any of the CBDC's actions or inactions. (D.E. 27, pp. 2-3).

On July 15, 2015, the undersigned entered a M&R recommending the Government's dispositive motion be denied because, taking the allegations in Plaintiff's complaint as true, he had alleged sufficient facts to state an FTCA claim against the Government, and the Government had failed to offer any evidence to suggest that it should be protected from liability under the independent contractor exception to the FTCA, such as "a copy of the contract it has with the CBDC or an affidavit from an employee with personal knowledge who can testify as to how medical treatment was assessed, provided, and evaluated at the CBDC." (D.E. 29, pp. 6-7).

On January 11, 2016, the District Court adopted the July 15, 2015 M&R denying the Government's motion to dismiss (D.E. 32), and on January 22, 2016, the Government filed its Answer to Plaintiff's complaint. (D.E. 33).

On September 21, 2016, Plaintiff filed his Statement of Uncontroverted Facts. (D.E. 39). Defendant has filed a response to Plaintiff's Statement of Uncontroverted Facts. (D.E. 45).

On September 30, 2016, the Government filed the instant motion for summary judgment, (D.E. 40), and on October 20, 2016, Plaintiff filed his response in opposition. (D.E. 47, 48).[2]

## III.  SUMMARY JUDGMENT EVIDENCE.

In support of its summary judgment motion, the Government offers the following evidence:

Ex. A:      Declaration of USMS Deputy Shannon Nash, lead jail inspector who visited the CBDC during 2010, 2011, 2012 (D.E. 45-1, pp. 1-3);

Ex. B:      Declaration of USMS Deputy Alfredo Lujan stating that the USMS does not have an office or dedicated work space at the CBDC (D.E. 45-2, pp. 1-3);

Ex. C:      Declaration of Tina Garcia, correctional officer and Floor Sergeant with the CBDC stating that USMS did not have an office or designate space at the CBDC, and that CBDC staff handled medical requests of CBDC prisoners (D.E. 45-3, pp. 1-3);

Ex. D:      Detention Services Intergovernmental Agreement dated March 17, 2009, between USMS and Nueces County (D.E. 45-4, pp. 1-12);

Ex. E:      August 24, 2011 complaint by Plaintiff to USMS Deputy Regino Quintero that he did not get x-ray results for leg or biopsy results for prostate.  Deputy Quintero called CBDC to discuss these medical issues.  (D.E. 45-5, p. 1).

Ex. F:      Transcript from August 24, 2011 hearing before Judge Rainey (D.E. 45-6, pp. 1-40);

Ex. G:      Surgical Pathology report dated November 28, 2011 (D.E. 45-7, pp 1-3);

Ex. H:      X-rays dated November 21, 2011 (D.E. 45-8, p. 1);

---

[2] Plaintiff has also filed a Motion for Judgment on the Pleadings (D.E. 49) which the undersigned recommends be denied based on the recommendation to grant Defendant's motion for summary judgment.

Ex. I:        Transcript from July 18, 2011 re-arraignment hearing (D.E. 45-9, pp. 1-18); and

Ex. J:        Sentencing transcript dated December 19, 2011 (D.E. 45-10, pp. 1-16).

As noted previously, Plaintiff offers his statement of uncontroverted facts sworn before a witness (D.E. 39, p. 8), to which he has attached copies of internet print-outs concerning certain medications and illnesses as well as certain copies of his medical records.

The uncontested facts establish that upon his arrival at the CBDC, Plaintiff was diagnosed with no serious medical issues.  (D.E. 39, p. 2).

On July 18, 2011, Plaintiff had his re-arraignment hearing before Judge Rainey. (D.E. 45-9, pp. 1-18).  Plaintiff did not raise any complaints about his medical issues or required treatment at that hearing.

Plaintiff was housed at the CBDC and immediately began submitting requests to see a doctor.  He was seen by Dr. Ahmed who prescribed Doxazosin, 1 mg, for Plaintiff's BEP.  (D.E. 39, p. 2).

On July 29, 2011, Plaintiff had a prostate biopsy at Memorial Hospital.  He was returned to CBDC with a prescription for antibiotics that was misplaced.  Dr. Ahmed ordered antibiotics and also prescribed Naproxen for pain and ordered an x-ray for Plaintiff's knee that had swelled following the biopsy.  Plaintiff was never treated by a urologist at the CBDC.  (D.E. 39, p.2).

On August 24, 2011, Plaintiff had a hearing before Judge Rainey. (D.E. 45-6, pp. 1-40). Plaintiff complained *inter alia*, that his plea was involuntary, his counsel was ineffective, and that he was not receiving proper medical care at the CBDC. (D.E. 45-6, p. 34). USMS Deputy Regino Quintero called the CBDC to inquire about Plaintiff's complaints and learned the CBDC had not yet received Plaintiff's prostate biopsy results or the x-ray results of his knee from Memorial Hospital, and he was scheduled to see CBDC medical personnel the following day. (D.E. 45-5, p. 1). Plaintiff complained to Judge Rainey of the same events that form the basis of this lawsuit, that he was not receiving the correct medication, that he did not have his test results, and that he had not been seen by a specialist. (D.E. 45-6, p. 34). Judge Rainey confirmed Plaintiff had no confirmation of prostate cancer to date, and Plaintiff complained he had difficulty "communicating" with the CBDC medical staff. Judge Rainey noted the "best thing" medically would be for Plaintiff "to get out of Coastal Bend" and be moved to a BOP facility. (D.E. 45-6, pp. 36-37).

On November 21, 2011, Plaintiff had his left shoulder x-rayed. (D.E. 45-8). The x-ray showed no fracture or subluxation, but minimal degenerative change. (D.E. 45-8). Dr. Ahmed told Plaintiff he had arthritis and offered Naproxen for the pain. Plaintiff also asked Dr. Ahmed for something to help his stomach pain. Dr. Ahmed stated he would see what he could do, but he did nothing. (D.E. 39, p. 3).

On November 28, 2011, the CBDC received Plaintiff's prostate biopsy results which indicated no evidence of malignancy. (D.E. 45-7, pp. 1-3).

## IV.    SUMMARY JUDGMENT STANDARD.

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion.  *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).  The Court may not weigh the evidence, or evaluate the credibility of witnesses.  *Id.*  Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e); *see also Cormier v. Pennzoil Expl.& Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions).  Unauthenticated and unverified documents do not constitute proper summary judgment evidence.  *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." *Anderson*, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

## V. DISCUSSION.

The FTCA's definition of "employee of the government" includes "officers or employees of any federal agency" and "persons acting on behalf of a federal agency in an official capacity." 28 U.S.C. § 2671. The definition specifically excludes from the meaning of "federal agency," contractors with the United States. *Id.* ("[T]he term 'Federal agency' … does not include any contractor with the United States.") At issue in

this case is whether the USMS is shielded from liability by virtue of it contracting with the CBDC to care for federal prisoners. The determination turns on the question of control or authority of the United States over the contract facility and the contract between the parties. *Logue,* 412 U.S. at 527-28. In *Logue,* the Supreme Court held that a state jail was not an agent of the United States when the United States had "no authority to physically supervise the conduct of the jail's employees." *Logue,* 412 U.S. at 530.

Congress authorizes the United States to contract with state and local authorities to provide safekeeping and care for federal prisoners. *Logue,* 412 U.S. at 529. The *Logue* Court specifically noted that such statutory authorization for housing of federal inmates "clearly contemplated that the day-to-day operations of the contractor's facilities were to be in the hands of the contractor, with the Government's role limited to the payment of sufficiently high rates to induce the contractor to do a good job." *Id.* However, what constitutes "day-to-day" operations may differ between parties and contracts. The fact that a contractor must comply with federal standards and regulations in the performance of a contract does not give rise to an employee relationship, but instead, whether or not the "day-to-day operations are supervised by the federal government." *United States v. New Orleans,* 425 U.S. 807, 815 (1971).

The Government moves for summary judgment to dismiss Plaintiff's claims premised on its argument that the CBDC is an independent contractor such that the United States cannot be held responsible for any of CBDC's actions or inactions. (D.E. 40, p. 12). In support of its argument, the Government offers uncontroverted summary

judgment evidence that the USMS did not retain any control over the medical services provided to federal prisoners housed at the CBDC.

The Detention Services Intergovernmental Agreement is an agreement between the USMS and Nueces County, Texas and provides for the housing of federal detainees at the CBDC. (D.E. 45-4, pp. 1-3). The agreement is dated March 17, 2009 and provides that: "This agreement is for the housing, safekeeping, and subsistence of federal prisoners, in accordance with [the] content set forth herein." (D.E. 45-4, p. 1). "Medical Services" is specifically addressed within the agreement. (D.E. 45-4, pp. 5-6). It provides in relevant part:

> The Local Government shall provide federal detainees with the full range of medical care **inside** the detention facility. The level of care inside the facility should be the same as that provided to state and local detainees. The Local Government is financially responsible for all medical care provided **inside** the facility to federal detainees. This includes the cost of medical supplies, over the counter prescriptions and, and prescription medications routinely stocked by the facility which are provided to federal detainees.
>
> …..
>
> The Federal Government is responsible for all medical care provided **outside** the facility to federal detainees.
>
> …..
>
> All **outside** medical care provided to federal detainees must be pre-approved by the Federal Government.
>
> …..
>
> Medical care for federal detainees shall be provided by the Local Government in accordance with the provisions of USMS, Publication 100-
> Prison                    health                    Care                    Standards

(www.usmarshals.gov/prisoner/standards.htm) and in compliance with USMS Inspection Guidelines, FormUSM-218 Detention Investigation Report. The local Government is responsible for all associated medical recordkeeping.

(D.E. 45-4, p. 5) (emphasis in original).

Thus, according to the contract between the USMS and Nueces County, the detention center was responsible for Plaintiff's day-to-day medical care and for exactly the type of medical complaints that form the basis of Plaintiff's lawsuit: BEP with no malignancy, arthritis, acid reflex, and RLS.

Plaintiff also maintains the USMS had a daily "presence" at the CBDC such that the Government should be held liable for the lack of any medical services. However, again the uncontested summary judgment evidence refutes Plaintiff's conclusory allegations that the USMS maintained an office at the CBDC or otherwise had a daily presence. To the contrary, Deputy Nash testified it was his duty to visit the CBDC once or twice a week as "lead jail inspector" for the USMS, and he would perform a "comprehensive inspection" annually. (D.E. 45-1, p. 1). In addition, on his weekly visits, he would speak to CBDC staff and federal detainees. (D.E. 45-1, p. 2). According to Deputy Nash, his supervisor, Carlos Alvarado "…wanted me to visit the CBDC in an effort to ensure that the detainees were aware that the USMS were concerned about their wellness, as well as to be able to ensure the courts regarding the conditions of their detention." (D.E. 45-1, p. 2). Sometimes, federal detainees would tell Deputy Nash about their medical care. (D.E. 45-1, p. 2). Deputy Nash would ask the detainee if they had filled out a medical request form to be submitted to CBDC medical personnel, and

instruct them on how to do it if they had not.  (D.E. 45-1, p. 2).  On occasion, Deputy

Nash would verify with CBDC medical personnel that the detainee's request for medical

treatment had been received.  (D.E. 45-1, p. 2).  However, Deputy Nash would not

intercede on the detainee's behalf in regard to any decisions made by the CBDC as to the

detainee's health care.  (D.E. 45-1, p. 2).  That is, the USMS did not make any decisions

regarding the daily operations of the CBDC.  (D.E. 45-1, p. 2).  Deputy Nash testifies

further that:

> Specifically, the CBDC medical personnel made all decisions concerning
> detainee medical treatment.  Such decisions regarding medical treatment as
> to what medical treatment (including the provision of medication) to
> provide, when to provide medical treatment, how to provide medical
> treatment and who would provide medical treatment to detainees were all
> determined by the CBDC.

(D.E. 45-1, p. 2).  The CBDC was only required to obtain approval from the USMS for

the detainee to see a specialist for treatment outside of the facility.  (D.E. 45-1, p. 3).

Deputy Nash recalls speaking with Plaintiff about his medical treatment while

housed at the CBDC.  (D.E. 45-1, p. 3).  Deputy Nash confirmed the CBDC medical

personnel had received his requests and he told Plaintiff that requests for treatment often

took time for the CBDC to address.  (D.E. 45-1, p. 3).

Deputy Marshal Alfredo Lujan investigated Plaintiff for violations of his failure to

register as a sex offender and related identity theft, and he worked closely with Assistant

U.S. Attorney Lance Duke who prosecuted Plaintiff for his federal violations.  (D.E. 45-

2, p. 1).  In this role, Deputy Lujan is familiar with the CBDC and how it generally

operated during Plaintiff's detention there.  (D.E. 45-2, pp. 1-2).  Deputy Lujan

confirmed the CBDC would determine the medical treatment to be provided to detainees, and if a specialist outside the facility was required, the CBDC would have to seek approval from the USMS for authorization. (D.E. 45-2, p. 2). Sometimes federal detainees would discuss medical problems with Deputy Lujan while in Court or at a debriefing, but Deputy Lujan does not recall contacting the CBDC to discuss Plaintiff's health care issues. (D.E. 45-2, pp. 2-3).

The Government also offers the declaration of Tina Garcia who worked as the floor sergeant in the dormitory where sex offenders were housed at the CBDC while Plaintiff was detained there. (D.E. 45-3, pp. 1-2). Sergeant Garcia confirms the USMS did not have a designated office or work space at the CBDC, but a deputy would visit on a weekly basis. (D.E. 45-3, p. 2). Sergeant Garcia notes the CBDC medical facility was staffed twenty-four hours a day by one or more registered nurses, and medical doctors visited the facility two times per week. (D.E. 45-3, p. 2). Sergeant Garcia describes the medical request process as follows:

> Detainees could request medical attention by filling out a paper form requesting medical treatment which was then placed in a locked box by the detainee. Neither floor sergeants, correctional officers or USMS deputies had access to the box in which detainees placed their requests for medical treatment. Only medical facility personnel could access the box to retrieve the medical treatment request forms. The box was checked several times a day. (D.E. 45-3, p. 3).

According to Sergeant Garcia, after reviewing the medical requests, CBDC medical personnel would advise the floor sergeants when to send a detainee to the medical facility. (D.E. 45-3, p. 3). Under exigent circumstances, floor sergeants could

and would forego the written request process and take detainees directly to medical. (D.E. 45-3, p. 3). The USMS did not transport detainees to the medical facility or to medical providers outside the CBDC. (D.E. 45-3, p. 3). Decisions regarding the necessity of specialized medical treatment or visitation to an offsite medical facility were made by CBDC medical personnel, but USMS approval was required to seek specialized medical treatment under some circumstances. (D.E. 45-3, p. 3).

The uncontested evidence refutes Plaintiff's unsupported allegations that the USMS retained a permanent presence at the CBDC or otherwise was involved in the day-to-day medical operations at the facility. The evidence squarely refutes that the USMS had the authority to supervise the administration of medical care to federal prisoners housed at the CBDC. *Logue,* 412 U.S. at 527-28. While the USMS made weekly inspections of the CBDC, it did not retain "substantial supervision over the day-to-day operations of the contractor in order to find that the [contractor] was acting as a government employee." *Letnes v. United States,* 820 F.2d 1517, 1519 (9th Cir. 1987). The uncontested evidence establishes that the CBDC is an independent contractor and thus does not fall within the purview of the FTCA. *Logue,* 412 U.S. at 529.

## VI.    RECOMMENDATION.

The Detention Services Intergovernmental Agreement as well as the testimony of the Government's witnesses establish that the CBDC was an independent contractor. The USMS neither maintained a daily presence at the CBDC, nor did it direct the day-to-day operations of its staff. While it is true that certain federal regulations regarding minimal standards of housing and care were required to be met by the CBDC, those regulations

did not equate with daily oversight. As such, the CBDC's actions fall within the independent contractor exception to the FTCA.

For these reasons, it is respectfully recommended that the Court grant the Government's Motion for Summary Judgment (D.E. 40), that Plaintiff's FTCA claim against the United States be dismissed with prejudice, and this action be dismissed.

Respectfully submitted this 28th day of November, 2016.

Jason B. Libby
United States Magistrate Judge

<u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(c); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a Magistrate Judge's report and recommendation within **FOURTEEN (14) DAYS** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).