UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOHN D AHERN | § | |
| | § | |
| Plaintiff | § | |
| VS. | § | CIVIL ACTION NO. 2:14-CV-259 |
| | § | |
| UNITED STATES OF AMERICA | § | |

**MEMORANDUM AND RECOMMENDATION
ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This civil rights action was filed by a former federal prisoner pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2674 *et seq.,* seeking damages against the United States of America based on the conduct of employees of the U.S. Marshals Service (USMS). (D.E. 1, 16). In particular, Plaintiff alleges that individual United States Marshals: (1) had actual knowledge that the medical care he was receiving at the Coastal Bend Detention Center (CBDC), a contract facility of the Government, fell below certain statutory and constitutional requirements; (2) had a duty to ensure Plaintiff's safety; and (3) failed to ensure Plaintiff's safety by delegating its duties and evading liability.

Pending before the Court are: (1) Plaintiff's Motion for Default Judgment (D.E. 59); (2) the Government's response to Plaintiff's motion (D.E. 60); and (3) the Government's Motion to Dismiss Complaint under Federal Rule of Civil Procedure 12(b)(1), or in the alternative, Motion for Summary Judgment. (D.E. 62).

For the reasons stated herein, it is respectfully recommended that the Court deny Plaintiff's Motion for Default Judgment. The Government's dispositive motion will be construed as a Rule 12(b)(1) Motion to Dismiss. Because the actions of the United States Marshals are protected by the discretionary function exception set forth in 28 U.S.C. § 2680(a), it is respectfully recommended further that the Court grant the Government's Rule 12(b)(1) Motion to Dismiss.

## I. JURISDICTION.

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II. PROCEDURAL BACKGROUND.

On June 11, 2014, Plaintiff filed his FTCA original complaint. (D.E. 1). Plaintiff alleged that, while he was in federal custody and confined at the CBDC in Robstown, Texas, from March 16, 2011 through January 6, 2012, he was denied appropriate and adequate medical attention for the following severe medical conditions: (1) Benign Enlarged Prostate (BEP); (2) stomach ulcers and acid reflux; (3) fluid on the knee with pain; (4) Restless Leg Syndrome (RLS); and (5) fever and infection following prostate biopsy. (D.E. 1, pp. 5-11).

Following a July 15, 2014 *Spears*[1] hearing, on July 18, 2014, the undersigned magistrate judge entered a Memorandum and Recommendation (M&R) to dismiss Plaintiff's FTCA claims finding that Plaintiff had failed to allege sufficient facts to state a

---

[1] *Spears v. McCotter,* 766 F.2d 179 (5th Cir. 1985).

negligence claim against the CBDC physician, Dr. Ahmed, or the USMS by which to hold the United States liable. (D.E. 14, pp. 7-8). In addition, it was recommended, to the extent Plaintiff was attempting to sue any individual for the violation of his constitutional rights under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 398 (1971), that those claims be dismissed for failure to state cognizable constitutional violations. (D.E. 14, pp. 9-10).

On July 31, 2014, Plaintiff filed objections to the July 18, 2014 M&R. (D.E. 16). Plaintiff emphasized that he had filed this action pursuant to the FTCA "seeking damages against the United States of America, for the negligent and wrongful acts of certain United States Marshals Service employees." (D.E. 16, p. 1).

On November 10, 2014, the District Judge referred the matter back to the undersigned to address the applicability of the FTCA to Plaintiff's claims against the USMS. (D.E. 18).

On December 22, 2014, a second evidentiary hearing was held. Plaintiff appeared in person to provide testimony about his FTCA claims against the USMS. Plaintiff testified the USMS had a "daily presence" at the CBDC. According to Plaintiff, the USMC had an office onsite at the CBDC and the Marshals performed daily walk-throughs to "count" offenders under their charge. Although the CBDC provides the medical staff, Plaintiff testified he submitted his grievances concerning medical care directly to the USMS and he repeatedly spoke to two Marshals in particular, Deputy Shannon Nash and Deputy Alfredo Lujan, about his medical needs. His complaints included:

(1)   His monthly medications were always delayed, causing him to miss approximately ten (10) days of Doxazosin a month;

(2)   Although Plaintiff was seen by a urologist to perform a prostate biopsy, he was never "treated" by a urologist and was simply given Doxazosin by Dr. Ahmed based on Plaintiff's representation that he had been prescribed it in the free world;

(3)   Plaintiff was prescribed Naproxen for complaints of pain. Not only did he need stronger pain medication, but the Naproxen caused him severe gastrointestinal problems, including stomach ulcers and acid reflux. The CBDC physician, Dr. Ahmed, told Plaintiff the USMS would not approve stronger pain medication;

(4)   Plaintiff suffered fluid on the knee but was never examined or diagnosed by a doctor but only prescribed more Naproxen;

(5)   Plaintiff requested to see a neurologist for his RLS but the USMS ignored his requests;

(6)   When Plaintiff had his prostate biopsy, his antibiotic prescription was lost and he suffered a serious infection with fever. The USMS was responsible for ensuring the prescription was filled and administered timely and this did not happen; and

(7)   Plaintiff complained to Deputy Lujan and Deputy Nash and these Marshals both assured him that his medical needs would be met. Plaintiff also filed numerous grievances with the USMS but he did not receive responses.

On January 8, 2015, the undersigned entered a supplemental M&R recommending that any FTCA claim premised on the conduct of a non-government employee, in particular Dr. Ahmed or other CBDC employee, be dismissed for failure to state a claim, and also that any constitutional claim against an individual defendant brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 398 (1971) be dismissed on those same grounds. (D.E. 21, p. 10). However, it was recommended that Plaintiff's FTCA claim against the United States, premised on the

conduct of the USMS and its control over what medications and medical treatment Plaintiff was authorized to receive, in addition to how his grievances concerning that care were addressed, be retained.  (D.E. 12).

On February 23, 2015, the Court adopted the supplemental M&R.  (D.E. 26).

On March 16, 2015, the Government filed a Rule 12(b)(6) Motion to Dismiss, or in the Alternative, Motion for Summary Judgment arguing the CBDC is an independent contractor such that the United States cannot be responsible for any of the CBDC's actions or inactions.  (D.E. 27, pp. 2-3).

On July 15, 2015, the undersigned entered a M&R recommending the Government's dispositive motion be denied because, taking the allegations in Plaintiff's complaint as true, he had alleged sufficient facts to state an FTCA claim against the Government, and the Government had failed to offer any evidence to suggest that it should be protected from liability under the independent contractor exception to the FTCA, such as "a copy of the contract it has with the CBDC or an affidavit from an employee with personal knowledge who can testify as to how medical treatment was assessed, provided, and evaluated at the CBDC."  (D.E. 29, pp. 6-7).

On January 11, 2016, the District Court adopted the July 15, 2015 M&R denying the Government's motion to dismiss (D.E. 32), and on January 22, 2016, the Government filed its Answer to Plaintiff's complaint.  (D.E. 33).

On September 30, 2016, the Government filed a Rule 12(b)(6) Motion to Dismiss, or in the Alternative, Motion for Summary Judgment reiterating that the CBDC is an independent contractor such that the United States cannot be responsible for any of the

CBDC's actions or inactions.  (D.E. 40, pp. 2-3).  Because the Government relied on matters outside of the pleadings, the undersigned construed the motion as one for summary judgment pursuant to Fed. R. Civ. P.  Rule 56(c).  (D.E. 40, pp. 10-12).  On November 28, 2016, the undersigned entered a M&R recommending the Government's summary judgment motion be granted because: (1) the uncontested evidence had established that the Government delegated Plaintiff's medical treatment to the CBDC, which is an independent contractor; and (2) the Government, therefore, is shielded from liability pursuant to *Logue v. United States,* 412 U.S. 521 (1973).  (D.E. 50, pp. 16-17).

On December 12, 2016, Plaintiff filed objections to the September 30, 2016 M&R.  (D.E. 54).  Plaintiff again emphasized in his objections that he is not seeking to assign vicarious liability for the CBDC's negligence to the Government.  (D.E. 54, p. 2).

On January 3, 2017, the District Judge sustained Plaintiff's objection, rejected the September 30, 2016 M&R, and denied the Government's summary judgment motion.  (D.E. 58).  The District Judge concluded that the parties have yet to consider whether the Government may delegate its constitutional duties and evade liability when its employees are on notice of a constitutional violation.  (D.E. 58, p. 2).  In a pretrial conducted on January 6, 2017, the District Judge granted the Government sixty (60) days to amend its answer and ninety (90) days to file a motion to dismiss.

On January 12, 2017, Plaintiff filed a Motion for Default Judgment pursuant to Federal Rule of Civil Procedure 55.  (D.E. 59).  The Government subsequently filed its response in opposition.  (D.E. 60).

On March 6, 2017, the Government filed its Amended Answer.

On April 5, 2017, the Government filed a Rule 12(b)(1) Motion to Dismiss, or in the Alternatively, Motion for Summary Judgment. (D.E. 62). Plaintiff has not responded to the Government's dispositive motion.

## III.  MOTION FOR DEFAULT JUDGMENT

Rule 55 authorizes the Court clerk to enter default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a).

Plaintiff moves for a Rule 55 default judgment, arguing that the District Judge has now twice denied the Government's summary judgment motions in which the Government has not addressed the pertinent allegations of this case. (D.E. 59, p. 3). Plaintiff seeks a default judgment "based on the record and the failure of the [Government] to mount any defense towards the material facts at issue." (D.E. 59, p. 3). The Government responds that Plaintiff's Motion for Default Judgment is without merit as it has pleaded and defended this case at all stages of the proceeding. (D.E. 60, pp. 1-2).

The fact that the District Judge has denied any of the Government's dispositive motions to date does not entitle Plaintiff to entry of default judgment. The record reflects that: (1) the Government has pleaded and vigorously defended their case throughout the course of these proceedings; and (2) the Government recently complied with the District Court's directive on January 6, 2017 to file an amended answer within sixty (60) days and a motion to dismiss within ninety (90) days. (*See* D.E. 61 and 62). Accordingly, it is respectfully recommended that Plaintiff's Motion for Default Judgment be denied.

## IV.    LEGAL STANDARD

In arguing that Plaintiff's FTCA claim for negligence against the individual United States Marshals falls within the discretionary function exception, the Government seeks dismissal pursuant to Rule 12(b)(1).   The Government alternatively moves for summary judgment.   Before considering whether the discretionary function exception applies, it is necessary to determine the appropriate standard of review.

Under Rule 12(b)(1), a party may challenge the subject matter jurisdiction of the district court to hear a case.   "In ruling on a motion to dismiss for lack of subject matter jurisdiction, courts, may evaluate (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."   *See Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001) (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).   A court must accept all factual allegations in the plaintiff's complaint as true.   *Id.*   The burden of establishing subject matter jurisdiction in federal court is on the party seeking to invoke it.   *Hartford Ins. Group v. Lou-Con Inc.*, 293 F.3d 908, 910 (5th Cir. 2002).   Accordingly, Plaintiff must prove that jurisdiction does in fact exist.   *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."   *Krim v. PCOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005) (citations omitted).   In considering a challenge to subject matter jurisdiction, the district court is "free to weigh the evidence and resolve

factual disputes in order to satisfy itself that it has the power to hear the case." *Id.* "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Generally, the issue of sovereign immunity is jurisdictional in nature. *F.D.I.C. v. Meyer*, 510 U.S. 471, 474 (1994). "The question of whether the United States has waived sovereign immunity pursuant to the FTCA goes to the court's subject-matter jurisdiction . . . and may therefore, be resolved on a Rule 12(b)(1) motion to dismiss." *Willoughby v. U.S. ex rel U.S. Dep't of the Army*, 730 F.3d 476, 479 (5th Cir. 2013) (internal citations omitted). *See also ALX El Dorado, Inc. v. Southwest Sav. & Loan Ass'n/FSLIC*, 36 F.3d 409, 410 n.5 (5th Cir. 1994) (noting that a motion to dismiss based upon governmental immunity from suit is properly viewed as one contesting subject matter jurisdiction under Rule 12(b)(1)). However, "[i]n circumstances where 'the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of plaintiff's case' under either Rule 12(b)(6) or Rule 56." *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004) (quoting *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981)). "

Courts have applied a Rule 12(b)(1) standard to review motions to dismiss asserting that an FTCA claim falls within the discretionary function exception when the discretionary function issue and the merits can be separately considered and decided." *Larue v. National Park Service of the Dep't of the Interior*, No. B-09-139, 2011 WL 1828037, at *4 (S.D. Tex. May 12, 2011) (citations omitted). In this case, the

undersigned finds that it can separately determine the applicability of the discretionary function exception and the merits of Plaintiff's negligence claims. Therefore, the Court will evaluate the Government's motion as a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction.

## V.    DISCUSSION.

The Government contends in its Rule 12(b)(1) motion that: (1) the FTCA excludes suits based upon the exercise of discretionary function; and (2) Plaintiff's negligence claims are, therefore, barred as they fall within the FTCA's discretionary function exception set forth in 28 U.S.C. § 2680(a). (D.E. 62, pp. 4-10). The Government further contends that the FTCA "is an inappropriate vehicle for bringing constitutional rights claims." (D.E. 62, pp. 10-11). Lastly, assuming Plaintiff has properly preserved any constitutional violations against individual deputy Marshals, the Government contends that Plaintiff cannot demonstrate an Eighth Amendment deliberate indifference claim. (D.E., pp. 11-14).

As noted above, Plaintiff has not responded to the Government's dispositive Rule 12(b)(1) motion. The motion, therefore, is deemed unopposed.[2] Nevertheless, in his objections to the September 30, 2016 M&R, Plaintiff argued that individual United States Marshals, who are employees of the Government, had actual knowledge that the care he was receiving fell below constitutional requirements and had a duty to ensure his safety.

---

[2] According to the Local Rules for the Southern District of Texas, "[f]ailure to respond will be taken as a representation of no opposition." LR 7.4.

(D.E. 54, pp. 2-3). More specifically, Plaintiff contended that three USMS officers, including Deputies Nash and Lugan, "failed to act decisively when charged with a duty of care, in the face known [] medical needs and a possibility of harm or danger." (D.E. 54 at p. 2). Accordingly, pursuant to various federal statutes, regulations, and the Detention Services Intergovernmental Agreement ("DSIA") entered between the USMS and Nueces County, Texas, Plaintiff alleged that these USMS officers breached a duty of care owed to Plaintiff to provide for the housing of federal detainees at the CBDC. (D.E. 54, p. 2).

The United States is immune from suit unless it consents to be sued, and the terms of such consent or waiver of its sovereign immunity "define [the] Court's jurisdiction to be sued." *United States v. Testan*, 424 U.S. 392, 399 (1976). The FTCA constitutes a limited waiver of sovereign immunity. *See* 28 U.S.C. § 1346(b). The FTCA authorizes a civil action lawsuit for damages:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

*Id.*; *Quijano v. United States*, 325 F.3d 564, 567 (5th Cir. 2003).

The FTCA, however, excludes discretionary functions from this waiver of sovereign immunity. *See* 28 U.S.C. § 2680(a). This exception provides that the sovereign immunity waiver does not apply to:

> any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation,

whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the federal agency or an employee of the Government, whether or not the discretion involved be abused.

*Id.*

"To state a claim under the FTCA, a plaintiff has the burden of stating a claim for a state-law tort and establishing that the discretionary function exception does not apply." *Spotts v. United States*, 613 F.3d 559, 569 (5th Cir. 2010) (citing *St. Tammany Par. Ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 215 (5th Cir. 2009)). If the exception is found to apply, the FTCA claim must be dismissed for lack of subject-matter jurisdiction. *Cohen v. United States*, 151 F.3d 1338, 1341 (5th Cir. 1998).

To determine whether the discretionary function exception bars suit against the United States in a particular case, the Court must consider: (1) whether the conduct of the Government employee involves an element of judgment or choice; and (2) if so, whether that judgment is grounded in considerations of public policy. *Cohen*, 151 F.3d at 1341 (citing *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991)). Under the first prong of the discretionary functions exception, courts must determine whether a statute, regulation or policy mandates a specific course of action. *Gaubert*, 499 U.S. at 322. The second prong of the analysis requires the courts to determine whether the judgment or choice is "grounded in social, economic, or political policy." *Id.* at 323. Thus, "[w]hen . . . a governmental agent violates a *nondiscretionary* federal law, regulation, or express policy, a suit against the United States may go forward subject to other FTCA, state tort laws,

and procedural requirements." *Lopez v. United States Immigration and Customs Enforcement*, 455 F. App'x 427, 432 (5th Cir. 2011).

Before considering whether the discretionary function exception bars Plaintiff's negligence claim against the individual United States Marshals, the undersign will first determine whether the USMS's decision to contract with the CBDC is covered by the discretionary functions exception. The first step of the *Gaubert* analysis instructs courts to analyze whether the USMS had discretion to contract with the CBDC. The USMS is charged with the responsibility for the safekeeping, care, and secure transfer of prisoners or detainees within its custody. *See* 18 U.S.C. §§ 4042(a)(2) and 4086. However, while generally expressing the policy goal of providing for the safekeeping and care of individuals in federal custody, none of these statutes either specify the method for such safekeeping and care or otherwise define a non-discretionary course of action. *See Bethae v. United States*, 465 F. Supp. 2d 575, 582 (D. S.C. 2006) (stating that while §§ 4042 and 4086 are very similar, "neither specify the method for such safekeeping"); *Garza v. United States*, 161 F. App'x 341, 343 (5th Cir. Dec. 20, 2005) (unpublished) (holding that § 4042 does not "define a non-discretionary course of action specific enough to render the discretionary function exception applicable").

Additional statutes and regulations permit the USMS to contract with state, local, or private jails to house federal inmates or detainees. *See* 18 U.S.C. §§ 4002 and 4013 (recognizing that the USMS, on behalf of the Attorney General, may contract with non-Federal institutions to house federal detainees or prisoners); 28 C.F.R. § 0.111(o) (stating that the USMS may acquire "adequate and suitable detention space, health care and other

services and materials required to support prisoners" within its custody "who are not housed in Federal facilities"). *See also Logue v. United States,* 412 U.S. 521, 529 (1973). (recognizing that Congress authorizes the United States to contract with state and local authorities to provide safekeeping and care for federal detainees or prisoners). The USMS, therefore, retained discretion to contract with a non-federal facility such as the CBDC to provide for the safekeeping and care for federal detainees.

With regard to the second prong of the *Gaubert* test, the USMS must weigh a variety of policy concerns in its decision to contract with a non-Federal facility. *See Johnson v. United States*, No. 4:05-CV40, 2006 WL 572312, at *5 (E.D. Va. Mar. 7, 2006) (citing *Williams v. United States*, 50 F.3d 299, 310 (4th Cir. 1995)) (explaining that the decision to hire an independent contractor to house federal prisoners involved weighing concerns of expense, administration, and access to the premises). Section 4002, which permits the USMS to contract with outside facilities, requires the USMS to balance factors such as expenses for the care and custody of federal prisoners, the sanitary conditions of confinement, and the quality of health care provided. *See* 18 U.S.C. § 4002.

In exercising its discretion to contract with an outside facility, the USMS entered into the DSIA with the CBDC on March 17, 2009, to house federal detainees at the CBDC. (D.E. 45-4, pp. 1-3). The agreement reflects the consideration of many policy concerns related to providing medical services for federal detainees. The DSIA expressly provides that: "This agreement is for the housing, safekeeping, and subsistence of federal prisoners, in accordance with [the] content set forth herein." (D.E. 45-4, p. 1). "Medical

Services" is specifically addressed within the agreement.  (D.E. 45-4, pp. 5-6).   It

provides in relevant part:

> The Local Government shall provide federal detainees with the full range of
> medical care **inside** the detention facility.  The level of care inside the
> facility should be the same as that provided to state and local detainees.
> The Local Government is financially responsible for all medical care
> provided **inside** the facility to federal detainees.  This includes the cost of
> medical supplies, over the counter prescriptions and, and prescription
> medications routinely stocked by the facility which are provided to federal
> detainees.
>
> …..
>
> The Federal Government is responsible for all medical care provided
> **outside** the facility to federal detainees.
>
> …..
>
> All **outside** medical care provided to federal detainees must be pre-
> approved by the Federal Government.
>
> …..
>
> Medical care for federal detainees shall be provided by the Local
> Government in accordance with the provisions of USMS, Publication 100-
> Prison                health                Care                Standards
> (www.usmarshals.gov/prisoner/standards.htm) and in compliance with
> USMS Inspection Guidelines, FormUSM-218 Detention Investigation
> Report.  The local Government is responsible for all associated medical
> recordkeeping.

(D.E. 45-4, p. 5) (emphasis in original).

The decision by the USMS to engage with the CBDC to house federal detainees is

grounded in competing policy concerns related to the needs of the detainees and the costs

associated in providing health care and other adequate conditions of confinement.  After

reviewing the relevant statutes and the DSIA's provisions addressing housing and

medical care issues, the USMS's decision to contract  with the CBDC "falls within the

discretionary function exception as it involves 'administrative decisions grounded in social, economic, and political policy.'" *Johnson*, 2006 WL 572312, at *5 (citing *United States v. S.A. Empressa de Viacao Aerea Rio Grandense (Variq Airlines)*, 467 U.S. 797, 814 (1984)). *See also Williams*, 50 F.3d at 310 (recognizing that "[t]he decision to hire an independent contractor to render services for the United States is precisely the type of decision that the [discretionary function] exception is designed to shield from liability").

The undersigned now turns to consider whether the discretionary function exception also shields any negligent actions undertaken by the individual United States Marshals with respect to its oversight of the medical care received by Plaintiff at the CBDC. The Fifth Circuit Court of Appeals considered a similar issue in *Lopez v. United States Immigration and Customs Enforcement*, 455 F. App'x 427 (5th Cir. 2011). In *Lopez*, the USMS contracted with the Crystal City Correctional Center ("CCCC") for the housing, care, and safekeeping of federal prisoners. *Id.* at 430. Julio Adalberto Rivas-Parada ("Parada") was housed at the CCCC after being taken into custody by Border Patrol agents. *Id.* at 429. Parada sought treatment in the CCCC for various ailments, but his condition continued to deteriorate despite receiving medical treatment. *Id.* at 430. After Parada was taken to the hospital, he ultimately died "of a heart attack precipitated by a fatal electrolyte imbalance from his malnutrition, diarrhea, and vomiting." *Id.*

The plaintiffs in *Lopez* filed a FTCA action against the United States, asserting in part that the USMS committed negligence with respect to its failure to oversee Parada's medical care at the CCCC. *Id.* at 431. Because "USMS policies mandated the USMS to

ensure adequate medical care, the plaintiffs argued that the USMS's failure to monitor CCCC's operation violated these non-discretionary policies." *Id.*

In considering whether to apply the discretionary function exception, the Fifth Circuit analyzed USMS policies which: (1) authorized the USMS to ensure that all USMS prisoners, such as Parada, receive medically necessary health services; (2) directed all emergency services to be provided to prisoners immediately; (3) authorized the USMS to meet minimum conditions of confinement, including adequate emergency medical coverage. *Id.* at 434 (citing U.S. MARSHALS SERV., POLICY DIRECTIVES §§ 9.15(C)(1), 9.25(A) and (A)(3) (2006)). After reviewing the language contained in these USMS directives, the Fifth Circuit did not "perceive a *nondiscretionary* failure by the USMS." *Id.* Rather, the Fifth Circuit concluded that the USMS's supervision of the CCCC, including the degree to which it exercised any oversight of CCCC's operations, was covered by the discretionary function exception. *Id.* *See Guile v. United States*, 422 F.3d 221, 231 (5th Cir. 2005) ("Supervision of a contractor's work, including the degree of oversight to exercise, is inherently a discretionary function.").

A negligence claim similar to Plaintiff's claim also was raised in *Johnson v. United States*, No. 4:05-CV40, 2006 WL 572312 (E.D. Va. Mar. 7, 2006). In *Johnson*, the plaintiff's deceased father, George Edward Fields ("Fields"), was a prisoner housed at the Virginia Peninsula Regional Jail ("VPRJ"). *Id.* at *1. Fields was diagnosed with prostate cancer in August of 1999, two months before his arrest and incarceration in the VPRJ. *Id.* Fields was held in custody at the VPRJ both before and after his federal jury trial in which he was convicted. *Id.* Fields's condition worsened while he awaited

sentencing, and he died on April 27, 2000 from prostate cancer and widespread metastasis. *Id.*

The USMS had previously entered into a contract with the VPRJ for the custody, care, and safekeeping of federal prisoners. *Id.* Under the contract, the VPRJ was required to provide the federal prisoners with the same level of medical care and services provided to local prisons. *Id.* While the contract allowed for the USMS to conduct periodic inspections of the VPRJ, the contract set forth that the VPRJ was responsible for the day-to-day operations which included around the clock emergency medical care for the prisoners. *Id.* In addition to challenging the USMS's decision to contract with the VPRJ, the plaintiff asserted that the USMS was negligent in failing to provide medical care to Fields even though the USMS had contracted with the VPRJ to provide medical services. *Id.* at *5.

The Virginia district court first concluded that the USMS's decision to contract with the VPRJ to house and provide medical care to federal prisoners was shielded by the discretionary function exception. *Id.* The court likewise rejected plaintiff's negligence claim, holding that:

> [A]fter concluding that contracting with the VPRJ to provide housing and medical care is within the ambit of the discretionary function exception, any contentions that the USMS was still negligent for failing to provide medical care cannot prevail, as the medical care decisions are embraced by the overarching decision to engage the VBRJ.

*Id.* (internal quotations omitted).

Similar to the contract at issue in *Johnson*, the DSIA provided that the CBDC was responsible for Plaintiff's day-to-day medical care inside the CBDC. While Plaintiff has

communicated to several United States Marshals his multiple concerns over the medical care he received at the CBDC, any negligent conduct by these marshals in failing to act on Plaintiff's behalf falls with the discretionary function exception. Plaintiff has failed to point to any statute or regulation that confers a nondiscretionary duty on the part of the United States Marshals to respond to Plaintiff's medical care concerns, especially when all medical care matters inside the facility have been delegated to the CBDC under the DSIA. The decision to entrust the CBDC with these medical care decisions comports with the USMS's overarching decision to contract with the CBCD for the housing and safekeeping of federal detainees like Plaintiff. *See Johnson*, 2006 WL 572312, at *6.

The final issue to address is whether the discretionary function exception applies to conduct by any United States Marshal that may be viewed as a constitutional violation. In 2009, a divided Fifth Circuit panel held that: (1) certain conduct of Border Patrol Agents in detaining a child with her father may have implicated constitutional concerns; (2) such conduct may have been non-discretionary; and (3) the district court, therefore "legally erred in concluding that the discretionary function exception to the FTCA deprived it of jurisdiction without first determining whether the Agents' conduct was outside their scope of authority." *Castro v. United States*, 560 F.3d 381, 392 (5th Cir. 2009). However, this panel decision was vacated upon rehearing en banc and has no precedential value. *Castro v. United States*, 608 F.3d 266, 268-69 (5th Cir. 2010) (en banc) (per curiam).

To date, the Fifth Circuit has yet to issue a controlling opinion determining "whether a constitutional violation, as opposed to statutory, regulatory, or policy

violations actions, operates to preclude the application of the discretionary function exception." *Spotts*, 613 F.3d at 569.[3]  In an unpublished decision, however, the Fifth Circuit concluded that the Eighth Amendment's prohibition against cruel and unusual punishment did not define a course of action "specific enough to render the discretionary function exception inapplicable." *See Garza*, 161 F. App'x at 343.  *See also Santos v. United States*, No. 05-60237, 2006 WL 1050512, at *3 (5th Cir. 2006) (per curiam) (unpublished) (affirming the district court's holding that a claim based on a violation of the Eighth Amendment does not fall outside the discretionary function exemption because "the government has not waived its immunity with regard to constitutional torts").

Plaintiff states in his original complaint that, based on the United States Marshals' violation of an established duty of care, individual marshals proceeded to act with deliberate indifference by failing to respond to conditions of which they were put on notice that posed a substantial risk of serious harm to Plaintiff.  (D.E. 1, pp. 3-4).  While making further references in his September 30, 2016 objections to the violations of his constitutional rights, Plaintiff also stated therein that his action "is ONLY about the

---

[3] In contrast to the Fifth Circuit, many other circuits have recognized that the discretionary function exception does not protect government officials from liability under the FTCA when they exceed the scope of their constitutional authority.  *See, e.g. Loumiet v. United States*, 828 F.3d 935, 943 (D.C. Cir. 2016) (holding that "the FTCA's discretionary-function exception does not provide a blanket immunity against tortious conduct that a plaintiff plausibly alleges also flouts a constitutional prescription"); *Limone v. United States*, 579 F.3d 79, 102 (1st Cir. 2009) (holding that the challenged "conduct was unconstitutional and, therefore, not within the sweep of the discretionary function exception"); *U.S. Fidelity & Guar. Co. v. U.S.*, 837 F.2d 116, 120 (3d Cir. 1988) (recognizing that "conduct cannot be discretionary of it violates the Constitution," and "[f]ederal officials do not possess discretion to violate constitutional rights or federal statutes").

USMS officers breach of duty owed to the Plaintiff by way of" §§ 4013 and 4042 as well as the DSIA.  (D.E. 54 , p. 2 (emphasis in original)).

As clarified in his September 30, 2016 objections, Plaintiff appears to predicate his negligence claim against the United States Marshals based primarily on violations of statutory or regulatory policies as opposed to the violations of his constitutional rights. Plaintiff offers no response or otherwise advances any argument to suggest that any alleged constitutional violations committed by the United States Marshals preclude the application of the discretionary function exception.   Even assuming that Plaintiff had successfully raised this argument, the undersigned adopts the reasoning articulated in *Garza* and concludes that the constitutional rights afforded to Plaintiff under the Fifth Amendment as a pretrial detainee fail to define a set course of conduct with respect to his medical care that would be considered to be non-discretionary.[4]  *See Garza*, 161 F. App'x at 343. *See also Fabian v. Dunn*, No. SA-08-cv-269-XR, 2009 WL 2567866, at *8 (W.D. Tex. Aug. 14, 2009) (adopting the reasoning in *Garza* to conclude that the plaintiffs' FTCA claims are barred by the discretionary function exception and rejecting argument that the Fifth Amendment mandated a specific course of action); *Champion v. United States*, No. 09-1655, 2010 WL 11463694, at *1 (W.D. La. Oct. 28, 2010) (concluding that the Eighth Amendment is not "specific enough, on its own, to prescribe a non-

---

[4] A pretrial detainee's protections from a federal official's deliberate indifference flow from the Fifth Amendment rather than the Eighth Amendment's prohibition against cruel and unusual punishment**.**  *Cardenas v. Young*, No. B-14-256, 2014 WL 12641034, at *7 (S.D. Tex. Dec. 24, 2014).   "Nevertheless, there is no significant distinction between pretrial detainees and convicted inmates when the denial of medical care is at issue."  *Pharris v. Randall County Sheriff*, No. 2:07-CV-0098, 2010 WL 1644202, at *4 (N.D. Tex. Apr. 22, 2010) (citing *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001)).

discretionary course of conduct which would render the discretionary function exception inapplicable").

Accordingly, Plaintiff's FTCA claim that the individual United States Marshals acted negligently with respect to the medical care received by Plaintiff at the CBDC is barred by the discretionary function exception.[5]

## VI.    RECOMMENDATION.

For the reasons discussed above, it is respectfully recommended that the Court: (1) deny Plaintiff's Motion for Default Judgment (D.E. 59); (2) grant the Government's Rule12(b)(1) Motion to Dismiss (D.E. 62) because the actions of the individual United States Marshals are protected under the FTCA's discretionary function exception; and (3) dismiss this action with prejudice for lack of subject matter jurisdiction.

Respectfully submitted this 19th day of May, 2017.

Jason B. Libby
United States Magistrate Judge

---

[5] To the extent that Plaintiff seeks to bring a constitutional tort claim against the United States, such a claim is not actionable under the FTCA. *See Meyer*, 510 U.S. at 478 ("The United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims").

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).